# United States Court of Appeals

### FOR THE EIGHTH CIRCUIT

_____

No. 06-1706

_____

| | | |
|---|---|---|
| In re: Union Pacific Railroad Employment Practices Litigation<br>_____ | * <br> * <br> * <br> * | |
| Brandi Standridge, on behalf of herself and all others similarly situated; Kenya Phillips, on behalf of herself and all others similarly situated, | * <br> * <br> * <br> * <br> * <br> * | |
| Plaintiffs - Appellees, | * <br> * | |
| Jackie Fitzgerald, an Oregon resident, on behalf of herself and all others similarly situated; Samantha Brand, a Washington resident, on behalf of herself and all others similarly situated, | * <br> * <br> * <br> * <br> * <br> * <br> * | Appeal from the United States District Court for the District of Nebraska. |
| Plaintiffs, | * <br> * | |
| v. | * <br> * | |
| Union Pacific Railroad Company, | * <br> * | |
| Defendant - Appellant, | * <br> * | |
| The Board of Trustees of Union Pacific Employees Health Service, | * <br> * <br> * | |
| Defendant. | * | |

_____  *
                                              *
American College of                           *
Obstetricians and Gynecologists;              *
U.S. Women's Chamber                          *
of Commerce,                                  *
                                              *
      Amici on Behalf of Appellee,   *
                                              *
Equal Employment Advisory                     *
Council; Chamber of Commerce                  *
of the United States,                         *
                                              *
      Amici on Behalf of Appellant,  *
                                              *
Olympia J. Snowe; Harry Reid;                 *
Patty Murray; Barbara Milkulski;              *
Maria Cantwell, Senators; Nita                *
M. Lowey; Louise M. Slaughter;                *
Diana Degette; Chris Shays;                   *
Betty McCollum; Henry A.                       *
Waxman; Sherrod Brown;                        *
Donna M. Christensen; Joseph                   *
Crowley; Sam Farr; Raul M.                    *
Grijalva; Jane Harman; Sheila                 *
Jackson Lee; Eddie Bernice                    *
Johnson; Dennis J. Kucinich;                  *
Carolyn Maloney; James P.                     *
McGovern; Jerrold Nadler;                     *
Jan Schakowsky; Allyson Y.                    *
Schwartz; Diane E. Watson;                    *
Anthony D. Weiner; Albert R.                  *
Wynn; Rush D. Holt; Jim Moran,                *
Representatives,                              *
                                              *
      Amici on Behalf of Appellee.   *

———————————

Submitted:  November 16, 2006
Filed:  March 15, 2007

———————————

Before BYE, BOWMAN and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Brandi Standridge and Kenya Phillips, as class representatives, sued Union Pacific Railroad Company ("Union Pacific") for sexual discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k).  The district court granted Standridge and Phillips's motion for partial summary judgment on July 15, 2005, and entered final judgment in their favor on February 10, 2006.  Union Pacific appeals.  For the reasons discussed below, we reverse.

## I.    BACKGROUND

Union Pacific, a freight company headquartered in Omaha, Nebraska, provides health care benefits to those of its employees who are covered by collective bargaining agreements ("agreement employees").  These agreement employees receive benefits through one of five plans.  While the plans provide benefits for services such as routine physical exams, tetanus shots and drug and alcohol treatments, they exclude coverage of allergy serum, immunization agents, biological sera and drugs that treat infertility.  They also exclude both male and female contraceptive methods, prescription and non-prescription, when used for the sole purpose of contraception.  Union Pacific only covers contraception when medically necessary for a non-

-3-

contraceptive purpose such as regulating menstrual cycles, treating skin problems or avoiding serious health risks associated with pregnancy.

Standridge and Phillips are two of the approximately 1,500 female agreement employees of child-bearing age employed by Union Pacific during the time period relevant to this litigation. Standridge and Phillips used prescription contraception for contraceptive purposes, and the plans did not cover the costs of their contraception. They, along with two other female employees, brought individual suits against Union Pacific alleging that Union Pacific discriminated against its female employees by not providing coverage of prescription contraception in violation of Title VII, as amended by the PDA. The Judicial Panel on Multidistrict Litigation consolidated the four similar actions against Union Pacific and transferred the consolidated action to the District of Nebraska. The district court granted class certification, named Standridge and Phillips as class representatives, and certified the class as "[a]ll females employed by Union Pacific Railroad Company after February 9, 2001, enrolled in one of the Agreement Plans who used prescription contraception, at least in part for the purpose of preventing pregnancy, without insurance reimbursement from said Plan."

The district court granted Standridge and Phillips's motion for partial summary judgment, finding that Union Pacific's failure to cover prescription contraception constitutes a violation of Title VII, as amended by the PDA. In holding that the coverage was discriminatory against women, the district court cited the language of the PDA, the purpose of its enactment, the Equal Employment Opportunity Commission's ("EEOC") interpretation of the PDA's application to prescription contraception and reasoning from other district court decisions. The district court rejected Standridge and Phillips's argument that unplanned pregnancies have a negative social impact. It also rejected Union Pacific's arguments that a requirement to cover prescription contraception would have a large financial impact; that the denial of all contraception results in equal treatment of men and women; that contraception

-4-

deals with fertility and is not a medical condition "related to" pregnancy; that Union Pacific's covered benefits are treatment-related, not preventive; and that there is no medical necessity for contraception with respect to fertility because pregnancy is a normal human condition. The district court held that Union Pacific violated Title VII, as amended by the PDA, because "it treats medical care women need to prevent pregnancy less favorably than it treats medical care needed to prevent other medical conditions that are no greater threat to employees' health than is pregnancy." *In re Union Pac. R.R. Employment Practices Litig.*, 378 F. Supp. 2d 1139, 1149 (D. Neb. 2005). After a stipulation by the parties regarding attorneys' fees, the district court entered final judgment in favor of Standridge and Phillips, staying enforcement pending Union Pacific's appeal.

## II.    DISCUSSION

Union Pacific argues that the PDA does not require contraception to be included in its health care coverage and that its health care coverage does not discriminate against women in violation of Title VII. We review de novo the district court's grant of summary judgment, viewing all of the evidence "in the light most favorable to the nonmoving party." *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 738 (8th Cir. 2005) (internal quotation omitted). We apply the same standard as the district court, and we also review de novo the district court's interpretation of statutes. *Fitzgerald v. Camdenton R-III Sch. Dist.*, 439 F.3d 773, 775 (8th Cir. 2006).

### A.    PDA Analysis

As an initial matter, the district court incorrectly characterized Union Pacific's policy as the denial of prescription contraception coverage for women. Union Pacific excludes all types of contraception, whether prescription, non-prescription or surgical

and whether for men or women, unless an employee has a non-contraception medical necessity for the contraception. While prescription contraception is currently only available for women, non-prescription contraception is available for men and women. Therefore, the issue is whether Union Pacific's policy of denying coverage for all contraception violates Title VII, as amended by the PDA.

Union Pacific argues that the district court erred in holding that the PDA requires coverage of contraception. It contends that the PDA only relates to discrimination against a woman for medical conditions that occur (or may occur) after she becomes pregnant, while the use of contraception only relates to human fertility before pregnancy. Standridge and Phillips argue that contraception is covered by the PDA because it is "related to" the condition of pregnancy.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Congress created the PDA to amend this provision in response to the Supreme Court's holding that the exclusion of pregnancy benefits did not violate Title VII. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 145-46 (1976). The PDA provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . . This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or

-6-

except where medical complications have arisen from an abortion.

42 U.S.C. § 2000e(k).

Neither the circuit courts nor the Supreme Court has considered whether the PDA applies to contraception.[1]  The Supreme Court, though, has discussed the scope

---

[1]District court decisions are split as to whether the PDA requires companies to provide coverage of contraception.  In *Stocking v. AT&T Corp.*, the district court initially expressed skepticism about the proposition but ultimately held that the PDA requires coverage.  436 F. Supp. 2d 1014, 1016-17 (W.D. Mo. 2006).  In *Cooley v. DaimlerChrysler Corp.*, the district court denied Chrysler's motion to dismiss because it found that its exclusion of prescription contraceptives could constitute gender discrimination.  281 F. Supp. 2d 979, 984-85 (E.D. Mo. 2003).  In *Mauldin v. Wal-Mart Stores, Inc.*, a district court certified a class of female employees alleging that Wal-Mart's lack of coverage for prescription contraception was a violation of Title VII, as amended by the PDA.  No. 01-2755, 2002 WL 2022334 (N.D. Ga. Aug. 23, 2002).  In *Erickson v. Bartell Drug Co.*, the district court held that a company's exclusion of prescription contraceptive benefits was discriminatory under Title VII, as amended by the PDA, because Congress' response to *Gilbert* required employers to provide women-only benefits and only women used prescription contraceptives. 141 F. Supp. 2d 1266, 1270-71 (W.D. Wash. 2001).

Other district courts, though, have concluded that the exclusion of contraception from coverage is not a violation of the PDA.  In *Cummins v. Illinois*, the district court held that the exclusion of contraception was not a violation of the PDA.  No. 02-4201 (S.D. Ill. Aug. 30, 2005).  It disagreed with the argument that the exclusion of contraception coverage only affected the health of a woman and held that both men and women have active roles in contraception and are affected by the exclusion of contraception coverage.  *Id.*, slip op. at 16.  In *Alexander v. American Airlines, Inc.*, the district court dismissed the case on standing grounds, saying also that "[b]y no stretch of the imagination does the prohibition against discrimination based on 'pregnancy, childbirth, or related medical condition[s]' require the provision of contraceptives as part of the treatment for infertility.  Moreover, the plan does not cover provision of contraceptives to anyone, male or female." No. 02-252, 2002 WL 731815, at *4 (N.D. Tex. Apr. 22, 2002).  In *EEOC v. United Parcel Service, Inc.*,

of the PDA in *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669 (1983), and *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991). In *Newport News*, the Supreme Court held that a company's health insurance plan that provided greater pregnancy benefits to its female employees than to the female spouses of its male employees was a violation of Title VII, as amended by the PDA. 462 U.S. at 685.  In its opinion, the Court acknowledged that the enactment of the PDA overturned its *Gilbert* decision.  *Id.* at 676.  The Court further analyzed the PDA in *Johnson Controls* in the context of a bona fide occupational qualification defense. Johnson Controls would not allow a woman who had the potential to become pregnant to work in jobs with actual or potential lead exposure because of the associated fetal health risks.  *Johnson Controls*, 499 U.S. at 191.  The Court held that an employer could not prevent a woman from working in those positions when it did not also prevent men from working in those positions, "unless her reproductive potential prevent[ed] her from performing the duties of her job."  *Id.* at 206.  Since reproductive potential did not prevent women from performing the duties of the positions in question, the Court held that discriminating against women on the basis of potential pregnancy was a violation of Title VII, as amended by the PDA.  *Id.*

In *Krauel v. Iowa Methodist Medical Center,* 95 F.3d 674, 679 (8th Cir. 1996), we applied these Supreme Court precedents and held that the PDA does not extend to

---

female employees alleged that a health plan's exclusion of coverage of oral contraception was sex discrimination under Title VII.  141 F. Supp. 2d 1216 (D. Minn. 2001).  The district court denied the employer's motion to dismiss because the female employees stated claims of disparate treatment and disparate impact, but it observed that the female employees did not allege the plan violated the PDA.  *Id.* at 1218 n.1.  The court then cited *Krauel v. Iowa Methodist Medical Center*, 95 F.3d 674 (8th Cir. 1996), and offered that it had "serious doubts about the merits of a PDA claim in this context.  The Eighth Circuit has made clear that prevention of conception is outside the scope of the PDA."  *Id.*

infertility treatments.  We concluded that the phrase "related medical conditions" in the PDA refers only to medical conditions associated with "pregnancy" and "childbirth," the specific terms that precede the general phrase.  *Id*. (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991), for the principle that "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration").  Infertility is "strikingly different" from pregnancy and childbirth because infertility prevents conception, while pregnancy, childbirth and medical conditions related to them can occur only after conception.  *Id*.  Therefore, *Krauel* holds that infertility is "outside of the PDA's protection because it is not pregnancy, childbirth, or a related medical condition."  *Id*. at 679-80.

In concluding that the PDA does not extend to infertility, we also distinguished the Supreme Court's holding in *Johnson Controls*.  While noting that the PDA does cover differential treatment of an employee based on health concerns that may arise during her pregnancy, we held that *Johnson Controls* does not support an expansion of the PDA to cover fertility matters prior to conception because "[p]otential pregnancy, unlike infertility, is a medical condition that is sex-related because only women can become pregnant . . . . [B]ecause the policy of denying insurance benefits for treatment of fertility problems applies to both female and male workers . . . [it] is gender-neutral . . . ."  *Id.* at 680.

With the guidance of these decisions, we now determine whether contraception is "related to" pregnancy for PDA purposes.  While contraception may certainly affect the causal chain that leads to pregnancy, we have specifically rejected the argument that a causal connection, by itself, results in a medical condition being "related to" pregnancy for PDA purposes.  *Id.* at 679 (rejecting the argument that "infertility is related to pregnancy because there is a causal connection between such a condition and pregnancy").  Union Pacific argues that contraception, analogous to infertility, is

gender-neutral.  Standridge and Phillips argue that the district court correctly found that contraception implicates potential pregnancy and that the PDA covers contraception because it prevents a gender-specific condition.

Following *Krauel*, we hold that contraception is not "related to" pregnancy for PDA purposes because, like infertility treatments, contraception is a treatment that is only indicated prior to pregnancy.  Contraception is not a medical treatment that occurs when or if a woman becomes pregnant; instead, contraception prevents pregnancy from even occurring.  *See* Merriam-Webster's Collegiate Dictionary 271 (11th ed. 2005) (defining contraception as the "deliberate prevention of conception or impregnation").  As in *Krauel*, the result in *Johnson Controls* does not require coverage of contraception because contraception is not a gender-specific term like "potential pregnancy," but rather applies to both men and women like "infertility." In conclusion, the PDA does not require coverage of contraception because contraception is not "related to" pregnancy for PDA purposes and is gender-neutral.[2]

We are not persuaded by the contention of Standridge and Phillips and the amici members of Congress that Congress intended to address the coverage of prescription contraception in the PDA.  In their views, the PDA was a "broad response" to the *Gilbert* decision, and Congress wanted to protect women in all areas concerning pregnancy, including the prevention of it.  However, the plain language of the PDA makes no reference to contraception.  Additionally, the House and Senate

---

[2]We note that as the phrase "relate to" does not broaden the scope of the PDA so that it extends to contraception, the PDA's use of the phrase "include, but are not limited to," also does not expand the scope of the PDA.  42 U.S.C. § 2000e(k). Instead, when that phrase is read in conjunction with the preceding phrase, it becomes clear that it refers to Title VII in its entirety and emphasizes that Title VII's prohibition on sex-based discrimination is not restricted solely to discrimination on the basis of "pregnancy, childbirth, or related medical conditions."  *Id.*

legislative histories do not mention contraception.  *See Erickson*, 141 F. Supp. 2d at 1274 (noting that Congress had "no specific intent regarding coverage for prescription contraceptives" in 1978).  This silence by Congress on the issue of contraception cannot be interpreted to expand the PDA to cover contraception.  *See Tafflin v. Levitt*, 493 U.S. 455, 462 (1990) (dismissing a party's argument concerning jurisdiction because Congress' silence indicated it "did not even *consider* the issue"); *see also Krauel*, 95 F.3d at 680.[3]

We also do not agree with Standridge and Phillips's argument that the PDA's express exclusion of coverage of abortion, without an accompanying express exclusion of coverage for contraception, implies an intent to include coverage of contraception.  Abortion is "the termination of a pregnancy," Merriam-Webster's Collegiate Dictionary 3, while contraception prevents pregnancy from even occurring.  While we do not need to decide whether the PDA would cover abortion without this exclusion, abortion arguably would be "related to" pregnancy in a manner that contraception is not because abortion can only occur when a woman is pregnant.  In contrast, there would be no reason for Congress to expressly exclude a treatment that is not "related to" pregnancy for PDA purposes, such as contraception.

Finally, we are not persuaded by the EEOC decision that interpreted the PDA as requiring employers to cover prescription contraception for women if they cover "other prescription drugs and devices, or other types of services, that are used to

---

[3]Amici members of Congress emphasize their intent that the PDA cover contraception.  However, in our constrained role of interpreting a statute, we cannot assume that these amici members represent the viewpoints of a majority of both houses of Congress in 1978.  Absent a clear mandate of Congress, it is not our role to determine what medical services employers should provide to their employees.  "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004).

-11-

prevent the occurrences of other medical conditions." EEOC Commission Decision on Coverage of Contraception (Dec. 14, 2000), *available at* http://www.eeoc.gov/policy/docs/decision-contraception.html. An agency's interpretation that is found in an opinion letter, policy statement, agency manual or enforcement guideline "lack[s] the force of law" and is not entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *see also EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 256-58 (1991), *superceded by* Pub. L. No. 102-166 § 109(a) (1991) (codified as amended at 42 U.S.C. § 2000e(f)). This EEOC decision is similar to a policy statement or enforcement guideline,[4] and we respect such interpretations "only to the extent that those interpretations have the 'power to persuade.'" *Christensen*, 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Since Congress did not give the EEOC rule-making authority, the amount of deference we give to this decision "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Arabian Am. Oil Co.*, 499 U.S. at 257 (internal quotation omitted).

We find the EEOC decision to be unpersuasive. The decision addressed a policy that denied coverage of prescription contraception but included coverage of the surgical contraceptive methods of vasectomies and tubal ligations. Union Pacific's coverage is different because it excludes coverage of all contraception for women and men, both prescription and surgical. Additionally, the decision compares prescription contraception to the broadest possible spectrum of other preventive treatments and

---

[4]The decision's opening paragraph identifies it is "a *formal statement of Commission policy* as applied to the facts at issue in these charges." EEOC Commission Decision on Coverage of Contraception (Dec. 14, 2000) (emphasis added).

-12-

services without citing a persuasive basis for doing so.  Furthermore, the EEOC did not issue any guidance on the issue of coverage of prescription contraception until 22 years after the enactment of the PDA.  The delay brings into question the consistency and persuasiveness of the EEOC's position.  Therefore, we find this decision unpersuasive on the question before us.

In conclusion, based on the language of the PDA and our previous holding in *Krauel*, we hold that the PDA does not encompass contraception.  Contraception, like infertility treatments, is a treatment that is only indicated prior to pregnancy because contraception actually prevents pregnancy from occurring.  Furthermore, like infertility, contraception is a gender-neutral term.  Therefore, Union Pacific's denial of coverage for contraception for both sexes did not discriminate against its female agreement employees in violation of Title VII, as amended by the PDA.

### B.    Title VII Analysis

Along with its argument that the PDA does not require coverage of contraception, Union Pacific argues that its exclusion of contraception coverage does not discriminate against its female agreement employees under a general Title VII analysis.  Title VII prevents an employer from making employment decisions that are based on an employee's gender.  *See Kratzer v. Rockwell*, 398 F.3d 1040, 1046 (8th Cir. 2005).  However, when an employer's action is not based on a sex classification, it is not a sex-based violation of Title VII.  *See Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997).

Standridge and Phillips brought a claim of disparate treatment based on gender discrimination.  To establish this disparate treatment claim, Standridge and Phillips must show, in part, that "other employees outside of the protected group were

-13-

allegedly treated more favorably and were similarly situated in all relevant respects." *Gilooly*, 421 F.3d at 739 (internal quotation omitted). While an employer must treat its employees similarly, it does not have to treat employees in a protected class more favorably than other employees. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (holding that Title VII does not require an employer to give preferential treatment to minorities or women).

In determining whether Union Pacific treated the similarly situated male employees more favorably than the protected female employees, we must compare the health benefits that Union Pacific's plans provided for men and women. The district court compared the "medicines or medical services [that] prevent employees from developing diseases or conditions that pose an equal or lesser threat to employees' health than does pregnancy." *Union Pacific*, 378 F. Supp. 2d at 1148. It found that the health plans treated men more favorably because the plans covered preventive medicines and services such as medication for male-pattern baldness, routine physical exams, tetanus shots, and drug and alcohol treatments. Union Pacific argues that the district court's comparator was too broad because it treated pregnancy as a disease that needed to be prevented instead of focusing on the narrow issue of contraception.

We decline to address whether pregnancy is a "disease." Instead, we simply hold that the district court erred in using the comparator "medicines or medical services [that] prevent employees from developing diseases or conditions that pose an equal or lesser threat to employees' health than does pregnancy."[5] As previously

_____

[5]Even if we adopted the district court's characterization that contraception prevents a "disease" only suffered by women, it is not clear Union Pacific's exclusion of contraception coverage would be a violation of Title VII under the *Newport News* analysis. In *Newport News*, the Supreme Court held that a policy violated Title VII, as amended by the PDA, because the female employees received better pregnancy benefits than the female spouses of the male employees. *Newport News*, 462 U.S. at

-14-

discussed, this case concerns Union Pacific's coverage of contraception for men and women. The proper comparator is the provision of the medical benefit in question, contraception. Union Pacific's health plans do not cover any contraception used by women such as birth control, sponges, diaphragms, intrauterine devices or tubal ligations or any contraception used by men such as condoms and vasectomies. Therefore, the coverage provided to women is not less favorable than that provided to men. Thus, there is no violation of Title VII.

## III.   CONCLUSION

Accordingly, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

The Court holds Union Pacific's exclusion of prescription contraception coverage does not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e - 2000e-17 (Title VII ), as amended by the Pregnancy Discrimination Act of 1978 (PDA). Because I agree with how the district court framed the discrimination inquiry, and therefore agree with its conclusion that Union Pacific's policy discriminates against women under Title VII, as amended by the PDA, I respectfully dissent.

The Court ends with the following pronouncement in footnote five: "Union Pacific provides an equal policy for its female and male employees." Ante at 15. This

---

684.  In this case, however, the female spouses of the male employees receive the same benefits as the female employees. Therefore, *Newport News* suggests that Union Pacific provides an equal policy for its female and male employees.

-15-

is a good place to begin.  When one looks at the medical effect[6] of Union Pacific's failure to provide insurance coverage for prescription contraception, the inequality of coverage is clear.  This failure only medically affects females, as they bear all of the health consequences of unplanned pregnancies.  An insurance policy providing comprehensive coverage for preventative medical care, including coverage for preventative prescription drugs used exclusively by males, but fails to cover prescription contraception used exclusively by females, can hardly be called equal.  It just isn't so.

The Court begins its analysis by finding the district court erred in confining its inquiry to Union Pacific's exclusion of coverage for prescription contraception used by women because its policy also excludes coverage for non-prescription contraception coverage (condoms) and surgical procedures to prevent male fertility (vasectomies).  The district court did not err in limiting its inquiry to prescription contraception.  That its policy does not provide coverage for condoms is unsurprising—Union Pacific has not identified any health insurance policy which would provide coverage for non-prescription, contraceptive devices available in drug stores and gas stations nationwide.  As for vasectomies, even if we were to look at its exclusion of coverage for vasectomies, the policy nonetheless discriminates against females.  When a policy excludes coverage for vasectomies, the medical effect of this exclusion is born entirely by women, as the record demonstrates women are the only gender which can become pregnant.

The Court holds Union Pacific's failure to cover prescription contraception is not covered by the PDA because prescription contraception use occurs prior to pregnancy.  Because such reasoning is at odds with the Supreme Court's construction

---

[6]The logical focus here is on the medical effect of Union Pacific's failure to cover prescription contraception.  This case is about health insurance coverage and determining whether such coverage discriminates against women.  There is no reason to stray from the bounds of a health paradigm when making this determination.

-16-

of the PDA, I respectfully disagree.  First, it must be noted Title VII is a remedial, civil rights statute and, as such, it should be broadly construed.  <u>Allen v. Entergy Corp., Inc.</u>, 193 F.3d 1010, 1020 (8th Cir. 1999).  Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer--(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ; or (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

42 U.S.C. § 2000e-2(a).  Congress enacted the PDA to amend the definition of sex in Title VII.  As such, the PDA provides in relevant part:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . .

42 U.S.C. § 2000e(k).

While the plain language of the PDA does not specifically include pre-pregnancy conditions, there is some indication Congress intended the act to cover pre-pregnancy discrimination.  Congress used the phrase "related medical conditions."  The word "related" indicates the PDA covers more than mere pregnancy.  In this case, the district court relied on the second clause of the PDA which is drafted even more broadly than the first, covering "women *affected by* pregnancy, childbirth, or related medical conditions."  <u>In re Union Pac. R.R. Employment Practices Litig.</u>, 378 F. Supp. 2d 1139, 1143 (D. Neb. 2005) (emphasis added) ("Because the PDA plainly states that its protection from discrimination, including discrimination in 'receipt of benefits

-17-

under fringe benefit programs,' applies to 'women affected by pregnancy' and not merely to pregnant women, the clear language of the statute requires that [Union Pacific's] Plans treat the risk of pregnancy no less favorably than the Plans treat other similar health risks.").  Finally, as noted by certain members of Congress, writing as *amici* on behalf of Standridge and Phillips, the first clause of the PDA specifically states: "The terms 'because of sex' or 'on the basis of sex' *include, but are not limited to*, because of or on the basis of pregnancy, childbirth, or related medical conditions." Brief for Certain Members of the Congress as Amicus Curiae 4.  The use of the phrase "include, but are not limited to" mandates a broad reading of the PDA because it suggests Congress was being illustrative rather than exclusive with the list following the phrase.  See Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").  The PDA's legislative history also promotes a broad construction of the act to include pre-pregnancy.  Representative Ronald Sarasin explained the PDA gives a woman "the right . . . to be financially and legally protected *before*, during, and after her pregnancy."  124 Cong. Rec. 38574 (daily ed. October 14, 1978) (statement of Rep. Sarasin, a manager of the House version of the PDA) (emphasis added).

Even if Congress did not intend the PDA to cover pre-pregnancy discrimination, the Supreme Court ostensibly broadened the scope of the PDA to include pre-pregnancy discrimination in International Union, United Automobile, Aerospace & Agricultural Implement Workers, UAW v. Johnson Controls, Inc., 499 U.S. 187 (1991).  The Court found classifying employees on the basis of childbearing capacity, whether or not they were already pregnant, "must be regarded, for Title VII purposes, in the same light as explicit sex discrimination."  Id. at 199.  In Johnson Controls, a battery manufacturer enforced a gender-based, fetal-protection policy excluding fertile women (women who were pregnant or capable of becoming pregnant) from working in jobs where they would be exposed to lead.  The bias was clear, as the policy at issue excluded only women.  Id. at 197.  The Court used the

-18-

PDA to bolster its holding the policy discriminated on its face as it "explicitly classifies on the basis of potential for pregnancy." The choice to treat all "female employees as potentially pregnant" was discriminatory. Id. at 199.

This court addressed the scope of the first clause of the PDA in Krauel v. Iowa Methodist Medical Center, 95 F.3d 674, 679-80 (8th Cir. 1996). In Krauel, we held an insurance policy excluding coverage for infertility treatments did not violate the PDA, as treatment for infertility is not treatment of a medical condition related to pregnancy or childbirth. Because "[p]regnancy and childbirth, which occur after conception, are strikingly different from infertility, which prevents conception," we held "the District Court properly concluded that infertility is outside of the PDA's protection because it is not pregnancy, childbirth, or a related medical condition." Id. We explicitly acknowledged however, under Johnson Controls, "[p]otential pregnancy, unlike infertility, is a medical condition that is sex-related because only women can become pregnant." Id. at 680. Because infertility, unlike potential pregnancy, is gender-neutral, it could not form the basis of a PDA claim. Id.

Krauel undoubtedly limited the scope of the PDA. The Court suggests Krauel drew the line at pregnancy, and held the PDA does not apply to infertility treatments because infertility, by its definition, occurs prior to pregnancy. In my assessment, Krauel cannot draw such a bright line because of Johnson Controls. This court has, after Krauel, at least implicitly indicated it will not draw the line of PDA coverage at pregnancy. See Walsh v. Nat'l Computer Sys., 332 F.3d 1150, 1160 (8th Cir. 2003) ("[Plaintiff] asserts that she was discriminated against . . . because she is a woman who had been pregnant, had taken a maternity leave, and *might become pregnant again*. 'Potential pregnancy . . . is a medical condition that is sex-related because only women can become pregnant.'" (emphasis added) (quoting Krauel, 95 F.3d at 680)). Other circuits have followed suit. See Kocak v. Cmty. Health Partners of Ohio, Inc., 400 F.3d 466, 469-70 (6th Cir. 2005), cert. denied, 126 S. Ct. 338 (2005) (holding, in light of Johnson Controls, the district court erred in concluding the plaintiff was not

-19-

protected by the PDA because she was not pregnant when the defendant refused to hire her).

Potential pregnancy, like infertility, by its definition occurs prior to conception. The same can be said for the use of prescription contraception.  The reason <u>Krauel</u> determined the PDA did not apply to an employer's failure to cover infertility treatments, even in light of <u>Johnson Controls</u>, was because infertility, unlike potential pregnancy, is a gender-neutral affliction.   After <u>Krauel</u>, denial of coverage for infertility treatments does not implicate the PDA because infertility affects both men and women.  The Court suggests infertility treatments and contraception are both pre-pregnancy and this fact makes the difference.  Although both are used prior to conception, when one looks at the medical effect of the denial of insurance coverage, prescription contraception is easily distinguishable from infertility treatments.  As the district court aptly notes: "Health plans that deny coverage for *contraception*, by definition, affect only the health of *women*."  <u>In re Union Pac.</u>, 378 F. Supp. 2d at 1145.  With prescription contraception a woman controls her potential pregnancy.  Such contraception is necessarily gender-related because it prevents pregnancy only in women.  Without contraception, a sexually active, fertile woman is almost certain to become pregnant.[7]  Once pregnant, only the woman's health is affected.  Infertility, by contrast, is a word used to describe a number of medical conditions affecting both men and women.   When a man or a woman is infertile, he or she is unable to contribute to reproduction as his or her reproductive organs do not function properly.  Infertility treatments may correct the medical condition of infertility in both men and women, allowing them to effectively make the necessary contribution to reproduction.  Thus, prescription contraception and infertility treatments are like apples and oranges.  Although both relate to pregnancy in a general sense, prescription contraception is,

---

[7]As Standridge and Phillips note, without contraception, a woman is likely to become pregnant twelve to fifteen times over the course of her reproductive life, and, in any given year, 85 out of 100 sexually active women of childbearing age will become pregnant.

unlike fertility treatments, at its very core gender-specific.  As such, a PDA claim based on a failure to provide prescription contraception coverage is not foreclosed by Krauel.  More importantly, the Court's holding here—"that contraception is not 'related to' pregnancy for PDA purposes because, like infertility treatments, contraception is a treatment that is only indicated prior to pregnancy," ante at 10,—is inconsistent with Johnson Controls.

In addition to holding the PDA does not apply under Krauel, the Court also holds Union Pacific's policy does not discriminate against women under Title VII, because the policy excludes contraception coverage for both men and women. Because I agree with the district court's comparison—between the insurance coverage provided to men and woman for all types of preventative medicine—I also dissent with regard to this holding. Whether something constitutes discrimination under Title VII, as amended by the PDA, is a matter of comparison.  "The PDA does not create substantive rights to preferential treatment." Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 436 (8th Cir. 1998) (citation and internal quotation marks omitted).  This court has noted quite the contrary: "[T]he PDA allows employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees.  The opposite, however, is also true–employers must treat pregnant women as well as they treat similarly affected employees." Id. at 436-37 (internal citations omitted).  "The PDA does not require an employer to overlook the work restrictions of pregnant women unless the employer overlooks the comparable work restrictions of other employees." Id. at 437.  It would follow, in the instant case, the PDA does not require Union Pacific to provide coverage for prescription contraception specifically to prevent pregnancy unless the employer provides comparable coverage to male employees.

What is comparable coverage?  The district court determined the proper comparison is between prescription contraception coverage and other preventative coverage. In contrast, the Court concludes the proper comparison is between coverage

-21-

for female contraception (prescription contraception) and male contraception (condoms and vasectomies).  As noted above, I agree with the district court about contraception being a gender-specific, female issue because of the adverse health consequences of an unplanned pregnancy (or even the general health consequences of any pregnancy).  As such, I agree the proper comparison is between the preventative health coverage provided to each gender.

The history of the PDA supports the district court's choice of comparators.  The PDA was enacted specifically to overrule the reasoning employed by the majority in General Electric Co. v. Gilbert, 429 U.S. 125 (1976), and to adopt the reasoning of the Gilbert dissenters.  See Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 678-79 & n.17 (1983) (noting the legislative history of the PDA demonstrates Congress viewed the Gilbert dissenters as expressing the true principle and meaning of Title VII when they explained it was facially discriminatory for an employer to offer protection against all risks but for pregnancy and "the appropriate classification was 'between persons who face a risk of pregnancy and those who do not.'").  In Gilbert, the Court refused to require employers to cover pregnancy in their short-term disability plans, noting that without the pregnancy coverage, plans for men and women were equal and covered the same risks.  Gilbert, 429 U.S. at 138-40.  In his dissent, Justice Stevens argued this was discriminatory because the employer treated absenteeism based on pregnancy differently than all other types of absenteeism.  Id. at 161 (Stevens, J., dissenting).  Likewise, Justice Brennan explained it was discriminatory for a company to devise "a policy that, but for pregnancy, offers protection for all risks, even those that are 'unique to' men or heavily male dominated."  Id. at 160.  (Brennan, J., dissenting).  Put another way, the Gilbert dissenters recognized, to be equal, a plan would have to cover for the uniquely female risk of pregnancy, although this required giving women additional benefits men would not receive.  Under this reasoning, as prescription contraception is a treatment for (or a method to control the occurrence and timing of) the uniquely female condition of potential pregnancy, the exclusion of this coverage in a plan providing other

-22-

preventative coverage is discriminatory.  Union Pacific provides coverage for a wide range of preventative medicines and procedures, including coverage for prescription drugs used exclusively by males to prevent benign prostatic hypertrophy.  Union Pacific specifically excludes coverage for prescription contraception when used for a preventative purpose.  Under the reasoning of the <u>Gilbert</u> dissenters, as adopted by Congress with the PDA, this is discriminatory.

Women are uniquely and specifically disadvantaged by Union Pacific's failure to cover prescription contraception.  Because I believe such a policy is violative of Title VII, as amended by the PDA, I respectfully dissent.  Although the district court's decision might appear to grant women benefits above and beyond those of men, the PDA requires such benefits be included in an otherwise comprehensive health care plan.

_____